1
2
3
4
5
6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

7  JOSHUA DAVID LAMBERT,

8                                    Plaintiff,          Case No. C22-5470-RAJ-SKV

9          v.

10  MIRIAM KASTLE, *et al*.,                             REPORT AND RECOMMENDATION

11                                   Defendants.

12

13              **I.      INTRODUCTION**

14          This is a civil rights action brought under 42 U.S.C. § 1983.  Plaintiff Joshua Lambert is

15  in the custody of the Washington Department of Corrections ("DOC") and is currently confined

16  at the Washington State Penitentiary ("WSP") in Walla Walla, Washington.  Plaintiff alleges in

17  this action violations of federal and state law arising out of events that occurred while he was

18  confined at the Monroe Corrections Complex ("MCC") – Special Offender Unit ("SOU") in

19  2019.  *See* Dkt. 10.  Defendants now move for summary judgment.  *See* Dkt. 22.  Plaintiff has

20  filed a response opposing Defendants' motion, and Defendants have filed a reply in support of

21  their motion.[1]  *See* Dkts. 44, 47.

22

23          [1] Plaintiff filed what he identified as a "tentative" response to Defendants' motion on August 11,
2023 (Dkt. 33), but he was subsequently granted leave to file an amended response, which he did on

REPORT AND RECOMMENDATION
PAGE - 1

The Court, having reviewed Plaintiff's amended complaint, Defendants' motion for summary judgment, the briefing of the parties, and the balance of the record, concludes that Defendants' motion should be granted, and that Plaintiff's amended complaint and this action should be dismissed.

## II.    BACKGROUND

The operative pleading in this action is Plaintiff's amended complaint which was filed on December 8, 2022. *See* Dkt. 10. Plaintiff identified twelve counts in his amended complaint, alleging violations of his federal constitutional rights to be free from retaliation, to free speech, and to equal protection, and related claims arising under state law. *See id*. at 6-48. Plaintiff identified as Defendants in his amended complaint MCC-SOU employees Miriam Dominique Kastle, Dennis McNamara, Kathy Gray, and Camden Crouse.[2] *Id*. at 3-4. Plaintiff also identified the Washington Department of Corrections ("DOC") as a Defendant. *Id*. at 4. Plaintiff requested that he be awarded declaratory relief and damages. *Id*. at 53.

Although Plaintiff identified twelve counts his amended complaint, he moves for voluntary dismissal of six of those counts in his amended response to Defendants' summary judgment motion. *See* Dkt. 44 at 23. Specifically, Plaintiff seeks dismissal of counts two, three, eight, nine, ten, and twelve of his amended complaint. *See id*. As Defendants have not

---

November 21, 2023 (Dkts. 39, 44). Defendants filed a reply to Plaintiff's "tentative" response on November 17, 2023 (Dkt. 43), but were subsequently granted leave to file an amended reply addressing Plaintiff's amended response, which they did on December 5, 2023 (Dkt. 47).

[2] Defendants, in their answer to Plaintiff's amended complaint, clarify that the correct name of the Defendant identified by Plaintiff as Miriam Kastle is Miriam Dominque Kastle, that the correct name of the Defendant identified as Kathy Grey is Kathy Gray, and that the correct name of the Defendant identified as Lambden Crouse is Camden Crouse. *See* Dkt. 18 at 1 nn.1-3. Defendants also note in their answer, and they reiterate in their motion for summary judgment, that Kathy Gray is a former employee of the DOC who has not been served with process in this action and has not participated in any fashion in this action to date. *See* Dkt. 18 at 1 n.3; Dkt. 22 at 1 n.1.

REPORT AND RECOMMENDATION
PAGE - 2

interposed any objection to Plaintiff's motion for voluntary dismissal of certain counts, this Court will recommend those counts be dismissed and will address herein only the six counts upon which Plaintiff has expressed a desire to proceed, *i.e.*, counts one, four, five, six, seven, and eleven of his amended complaint.  The Court describes each of those six counts below.

Plaintiff alleges in the first count of his amended complaint that his First Amendment right to be free from retaliation was violated when a decision was made to close the SOU law library on one of the two days per week it was scheduled to be open after Plaintiff filed a grievance against law library staff member Dennis McNamara.  *See* Dkt. 10 at 6-17.  Plaintiff asserts that Mr. McNamara and MCC Legal Liaison Officer Miriam Dominique Kastle are both implicated in this claim because Mr. McNamara closed the library in retaliation for Plaintiff filing a grievance against him and Ms. Dominique Kastle maintained the closure.  *See id*. at 14.

Plaintiff alleges in the fourth count of his amended complaint that his Fourteenth Amendment right to equal protection was violated by Mr. McNamara and/or Ms. Dominique Kastle when the law library was closed in retaliation for Plaintiff writing a grievance.  *See* Dkt. 10 at  18-22.  Plaintiff claims that other similarly situated inmates have been allowed to write grievances regarding the law library without resulting in closure of the library or a reduction in law library time.  *See id*.

Plaintiff alleges in the fifth count of his amended complaint that his Fourteenth Amendment right to equal protection was violated when Ms. Dominique Kastle told other inmates the SOU law library was going to close on Mondays because Plaintiff filed a grievance, while other similarly situated inmates were afforded privacy with respect to grievances they had written.  Dkt. 10 at 22-26.

REPORT AND RECOMMENDATION
PAGE - 3

1    Plaintiff alleges in the sixth count of his amended complaint that his First Amendment

2    right to free speech was violated when MCC Classification Counselor Camden Crouse and

3    Custody Unit Supervisor Kathy Gray told him he was not allowed to attend his classification

4    review hearing in July 2019. *See* Dkt. 10 at 26-31. Plaintiff claims that Mr. Crouse and Ms.

5    Gray came to see him in the segregation unit in July 2019, advised him they were doing a

6    classification review, and asked him to sign the classification hearing notice and appearance

7    waiver. *Id*. at 28. According to Plaintiff, he did not waive the hearing and he told Mr. Crouse

8    and Ms. Gray he wanted to go to it, but they told him he was not allowed to do so. *See id*.

9    Plaintiff maintains that classification hearings are the DOC's "designated forum for inmates to

10    present speech on their behalf in regards to custody classification, housing and various related

11    issues" and that refusing him the opportunity to attend the classification review therefore denied

12    him his right to speech. *Id*. at 26, 29-30.

13    Plaintiff alleges in the seventh count of his amended complaint that Mr. Crouse and Ms.

14    Gray, in allegedly refusing to allow him to attend his classification review hearing, violated his

15    Fourteenth Amendment right to equal protection. *See* Dkt. 10 at 31-32. Plaintiff claims that

16    other similarly situated inmates were allowed to attend their classification hearings. *See id*.

17    Finally, Plaintiff alleges in the eleventh count of his amended complaint a state law

18    breach of contract claim. *See* Dkt. 10 at 45-47. Plaintiff claims that the DOC's Grievance

19    Program Manual "states a unilateral contract" and that, in accordance with that contract, when he

20    wrote his grievance regarding the law library a duty was created on the part of Ms. Dominique

21    Kastle and Mr. McNamara to keep the grievance confidential and to not retaliate against Plaintiff

22    for writing it. *See id*.

23

REPORT AND RECOMMENDATION
PAGE - 4

1

2

3

4

## III.    FACTS

As discussed above, the claims asserted in this action arose out of events that occurred while Plaintiff was confined at the MCC-SOU in 2019, and relate to the SOU law library and a classification/transfer meeting.  The facts relevant to these claims are set forth below.

### A.    Law Library

MCC is a multi-facility complex comprised of five separate housing units, including the SOU.  Dkt. 24 (Declaration of Miriam Dominique Kastle), ¶ 3.  There are three physical law libraries within the complex, including one at the SOU.  *Id*.  Ms. Dominique Kastle is the law librarian at MCC and is responsible for all three law libraries, as well as separate legal research areas.  *Id*., ¶ 4.  At times relevant to this action, Ms. Dominique Kastle had no other staff members to help supervise and manage the three law libraries, and she therefore relied on a community volunteer, Mr. McNamara, to help staff the libraries.  *Id*.

During 2019, offenders in Plaintiff's housing unit were assigned to attend the SOU law library on Monday and Wednesday mornings, and Plaintiff was a frequent attendee.  Dkt. 24, ¶ 7.  Mr. McNamara, who has been volunteering at the prison for almost thirty years, regularly staffs the SOU law library on Monday mornings.  *See id*., ¶ 6; Dkt. 25 (Declaration of Dennis McNamara), ¶ 2 .  In March 2019, Plaintiff became argumentative, demanding, and disrespectful with Mr. McNamara when he thought Mr. McNamara was not charging him correctly for copies.  Dkt. 25, ¶ 5.  Mr. McNamara advised Plaintiff to speak with the law librarian, Ms. Dominique Kastle, as she was in charge of the area.  *Id*.  Mr. McNamara then called Ms. Dominique Kastle to report Plaintiff's demanding and disrespectful behavior.  *Id*.

After Mr. McNamara reported to Ms. Dominique Kastle that some of the offenders, including Plaintiff, had been demanding and were treating him disrespectfully, Ms. Dominique

Kastle became concerned that Mr. McNamara might choose to donate his time elsewhere and leave the SOU law library without anyone to staff the Monday morning session.  *See* Dkt. 24, ¶¶ 8, 9.  Ms. Dominique Kastle advised Plaintiff to be careful how he treated Mr. McNamara as he was a volunteer and could choose to end his volunteer service at the law library.  *Id*., ¶ 9.  Shortly thereafter, in April 2019, Plaintiff filed a grievance claiming that Mr. McNamara had threatened to "nail" him if he filed a grievance or lawsuit against Mr. McNamara.  *See* Dkt. 25, ¶ 6; Dkt. 42 at 5.  Mr. McNamara denied threatening Plaintiff and an investigation of the allegation found no evidence to support it.  *See id*.

By mid-June 2019, Mr. McNamara was feeling unappreciated by the SOU law library patrons, including Plaintiff, and decided to take a Monday off to consider whether he wanted to keep donating his time to the prison law libraries.  Dkt. 25, ¶ 7.  On or about June 17, 2019, Mr. McNamara gathered the SOU law library patrons to explain the upcoming closure of the law library.  *Id*., ¶ 8.  Plaintiff, who was present in the law library at the time, refused to join the group.  *See id*.  Mr. McNamara advised the group that he did not appreciate false allegations being made against him, and he reminded them that he was a volunteer and could choose to terminate his service to the law library at any time.  *Id*.  Mr. McNamara also explained that if he decided to stop donating his time to the SOU law library, the library would likely have to close on Monday mornings.[3]  *Id*.  Immediately following Mr. McNamara's announcement, Plaintiff became agitated, threatened to sue Mr. McNamara, and left the law library.  *See id*., ¶ 9, Ex. A.

On or about June 26, 2019, Ms. Dominique Kastle spoke with a handful of SOU law

---

[3]  Mr. McNamara, after taking a single Monday off in June 2019, decided to continue his volunteer service in the SOU law library.  *See* Dkt. 25, ¶ 7.  Mr. McNamara took another Monday off in July 2019 for personal needs, but otherwise continues to staff the SOU law library on Mondays.  *See id*., ¶ 10; Dkt. 24, ¶ 12.

REPORT AND RECOMMENDATION
PAGE - 6

library patrons about the Monday morning closure of the library.  Dkt. 24, ¶ 11.  She explained

that Mr. McNamara had decided to take leave from the SOU law library and there was no one to

cover his shift.  *Id*.  She further indicated that someone had given Mr. McNamara a hard time

and suggested this person apologize, though she did not name any names.  *Id*.  According to

Plaintiff, Ms. Dominique Kastle, in her discussion with the law library patrons on June 26, 2019,

originally spoke in general terms about a grievance being the cause of the Monday law library

closure and she advised them that they should not grieve Mr. McNamara because he was a

volunteer.  *See* Dkt. 10 at 23, 25.  Plaintiff acknowledges that Ms. Dominique Kastle did not

initially specify that he had filed the grievance at issue but claims he "wanted to make sure she

did not" so he "reminded her that grievances were confidential."  *Id*. at 25.  After Plaintiff

offered that reminder to Ms. Dominique Kastle, she revealed that it was Plaintiff who had written

the grievance she was referring to.  *See id*. at 23, 25.

Plaintiff thereafter submitted a grievance complaining of Ms. Dominique Kastle's

disclosure of information regarding Plaintiff's prior grievance to other offenders and claiming

the disclosure was retaliatory.  *See* Dkt. 42 at 9.  The investigation into this grievance

substantiated that Ms. Dominique Kastle had made statements attributing the Monday law library

closure to Plaintiff writing a grievance against Mr. McNamara, though it did not find evidence

that Ms. Dominique Kastle's conduct was retaliatory.  *See id*.

### B.    Classification/Transfer Meeting

On June 29, 2019, shortly after events unfolded in the SOU law library, Plaintiff was

involved in a fight with another inmate for which he received an infraction.  Dkt. 26 (Declaration

of Camden Crouse), ¶ 4, Attach. A at 2.  This was Plaintiff's second fight in approximately four

months and, as a result of his behavior, Plaintiff's custody score dropped from medium to close

REPORT AND RECOMMENDATION
PAGE - 7

custody. *See id.* On July 12, 2019, Mr. Crouse met with Plaintiff to review his current custody facility plan ("CFP"), which apparently included a plan change, a custody demotion, and a recommended transfer to WSP. *See id.*, ¶ 5, Attach. B. Plaintiff refused to sign the classification hearing notice/appearance waiver presented to him by Mr. Crouse. *Id.*, Attach. A at 4; Attach. B. Mr. Crouse then proceeded to read the facility plan and transfer recommendation to Plaintiff who indicated he understood. *See id.*, ¶ 5, Attach. A at 4.

According to Mr. Crouse, his meeting with Plaintiff on July 12, 2019, constituted a Facility Risk Management Team ("FRMT") meeting, which is a meeting used to discuss custody, classification, and transfers. *See* Dkt. 26, ¶ 5, Attach A at 4, Attach B. The staff members involved in Plaintiff's custody review agreed with the recommendation that Plaintiff be demoted to close custody and that he be transferred to WSP. *See id.*, ¶ 6, Attach. A at 4.

Plaintiff thereafter filed a classification appeal challenging the decisions made at the July 12, 2019, FRMT hearing. *See* Dkt. 42 at 18. In his appeal, Plaintiff claimed that he was not allowed at the hearing, that he did not have an opportunity to object to false information and "distortions" presented at the hearing, and that he did not have an opportunity to "state my facts." *Id.* According to the appeal, the false information relied upon at the hearing was that Plaintiff had been aggressive "since January" and had hit people, though Plaintiff maintained he "didn't actually do anything guilty." *Id.* Finally, Plaintiff claimed in his appeal that Mr. Crouse had promised to provide him paperwork regarding the classification hearing, but that this "changed" after Plaintiff refused to sign the classification hearing notice. *Id.* The reviewer who responded to Plaintiff's appeal construed it as an appeal to a serious infraction that was part of the basis for the classification decision, and denied the appeal because Plaintiff's infraction was already under appeal. *See id.*

REPORT AND RECOMMENDATION
PAGE - 8

# IV.    DISCUSSION

## A.    Exhaustion

Defendants first argue in their motion for summary judgment that Plaintiff was required to exhaust his administrative remedies before filing suit but failed to do so with respect to a majority of the claims asserted in his amended complaint.  Dkt. 22 at 10-12.  Defendants assert that Plaintiff filed only one grievance regarding issues in this case, which was a grievance filed in late July 2019 complaining that Ms. Dominique Kastle had told other inmates Plaintiff was to blame for the law library closure on Monday mornings.  *See id*. at 11; Dkt. 23 (Declaration of Carol Smith), ¶ 11.  Defendants argue that because Plaintiff filed only this single grievance relating to the claims asserted in this action, Plaintiff's claims based on the closure of the law library and on his alleged exclusion from his transfer/classification hearing, those claims are barred and must be dismissed.  Dkt. 22 at 11-12.

Section 1997e(a) of Title 42 of the United States Code provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  Section 1997e(a) requires *complete* exhaustion through any available process.  *See Porter v. Nussle*, 534 U.S. 516, 524 (2002); *Booth v. Churner*, 532 U.S. 731, 739 (2001).  Section 1997e(a) also requires *proper* exhaustion.  *Woodford v. Ngo*, 548 U.S. 81, 93 (2006).  "Proper" exhaustion means full compliance by a prisoner with all procedural requirements of an institution's grievance process.  *See id*. at 93-95.

Failure to exhaust administrative remedies is an affirmative defense which a defendant must plead and prove.  *Albino v. Baca*, 747 F.3d 1162, 1168 (9th Cir. 2014) (citing *Jones v. Bock*, 549 U.S. 199, 216 (2007)).  A defendant must produce evidence demonstrating that there

REPORT AND RECOMMENDATION
PAGE - 9

1   was an available administrative remedy and that the prisoner did not exhaust that remedy.  *Id*. at

2   1172.  The burden then shifts to the prisoner who must show that there is something in his case

3   that made the existing remedies effectively unavailable to him.  *Id*.  If undisputed evidence

4   viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is

5   entitled to summary judgment.  *Id*. at 1166.

6       The Ninth Circuit has recognized that acts by prison officials that prevent the exhaustion

7   of administrative remedies may make administrative remedies effectively unavailable to a

8   prisoner.  *See Nunez v. Duncan*, 591 F.3d 1217, 1224-25 (9th Cir. 2010).  Similarly, in *Ross v.*

9   *Blake*, 578 U.S. 632 (2016), the United States Supreme Court held that § 1997e(a) requires an

10  inmate to exhaust only those grievance procedures "that are capable of use to obtain some relief

11  for the action complained of."  *Id*. at 642 (citation and internal quotation marks omitted).

12      Defendants have produced evidence demonstrating that the DOC has an established

13  Offender Resolution Program (formerly known as the Inmate Grievance Program) through which

14  offenders may file complaints relating to various aspects of their incarceration.  *See* Dkt. 23 at

15  ¶¶ 2-3, 5, Attach A at 6.  Among the issues an offender may challenge through the program are:

16  (1) DOC policies, rules, and procedures; (2) the application or lack of application of policies,

17  rules, and procedures; (3) the actions of staff or volunteers; (4) the actions of other offenders; (5)

18  retaliation against an inmate for good faith participation in the grievance program; (6) personal

19  safety; and (7) physical plant conditions.  *See id*. at ¶ 5, Attach. 1 at 6, 9.

20      Offenders have twenty working days from the date of an incident to file a complaint, and

21  the grievance procedure has four levels of review.  Dkt. 23 at ¶¶ 8, 9.  The initial level, Level 0,

22  is the informal resolution stage.  *Id*. at ¶ 9.  At this level, the Grievance Coordinator at the facility

23  where the offender is housed receives a written complaint from an offender which identifies an

REPORT AND RECOMMENDATION
PAGE - 10

issue with respect to which the offender wishes to pursue a resolution. *Id*. The Grievance

Coordinator either pursues informal resolution, returns the complaint to the offender for

rewriting or for additional information, rejects the complaint if the issue is not eligible for

resolution through the Offender Resolution Program, or accepts the complaint and processes it as

a concern that warrants Level I review. *See id*.

At the first step of the formal resolution process, Level I, the Grievance Coordinator

either investigates the offender's concern or assigns the complaint to an employee or contract

staff member to investigate. Dkt. 23 at ¶ 9. Once the investigation and review are complete, the

Grievance Coordinator issues a formal response. *Id*. An offender who is dissatisfied with the

response received from the Grievance Coordinator may appeal the decision to the next level but

must do so within five days. *Id*. The appeal is assigned to an employee or contract staff member

to investigate, and the Superintendent of the facility issues a formal response to the offender. *Id*.

This is known as Level II. *Id*.

An offender who is dissatisfied with the Level II response may appeal that decision to

DOC headquarters but, again, must do so within five days. Dkt. 23 at ¶ 9. This is known as

Level III. *Id*. At this level, grievances are reinvestigated by DOC Headquarters, and the

complaint is assigned to a member of the DOC's Headquarters staff for investigation. *Id*. Once

the investigation is complete, a formal response is issued by the Deputy Secretary of the DOC or

his/her designee. *Id*. This is the final level of review under the Offender Resolution Program.

*See id*.

According to the DOC's official records, Plaintiff filed thirteen grievances during 2019,

the year in which the events underlying Plaintiff's claims occurred, and eleven of those

grievances were appealed through Level III. Dkt. 23, ¶ 11. Among the grievances filed by

REPORT AND RECOMMENDATION
PAGE - 11

Plaintiff in 2019 was one in which he alleged that he heard Ms. Dominique Kastle tell two other offenders that it was Plaintiff's fault the law library was closed on Mondays because Plaintiff filed a grievance against Mr. McNamara. *Id.*; *see also*, Dkt. 42 at 9.  None of the other grievances filed by Plaintiff in 2019 related to the law library closure or to Plaintiff's FRMT meeting.  *See* Dkt. 23, ¶ 12.

Plaintiff argues in his amended response that he exhausted his remedies with respect to all relevant claims, *i.e.*, counts one, four, five, six, seven and eleven of his amended complaint. Dkt. 44 at 13-15.

### 1. Count One

As to count one in which Plaintiff alleges that Ms. Dominique Kastle and Mr. McNamara closed the SOU law library on Mondays in retaliation for Plaintiff filing a prior grievance against Mr. McNamara, Plaintiff asserts that he exhausted the claim because he filed a grievance in April 2019, before the alleged retaliation occurred, complaining that Mr. McNamara had threatened to retaliate against him.  *Id.* at 14.  Plaintiff also asserts with respect to count one that administrative remedies were effectively unavailable to him because under the DOC's Offender Resolution Program grievances based on hearsay are not permitted.  Plaintiff maintains that though he heard Ms. Dominique Kastle say the law library was closed on Monday's because of the grievance he filed, he never heard Mr. McNamara say that and, thus, Mr. McNamara's acts in relation to closing the law library constituted "hearsay" and could not be grieved.  *See id.* at 14-15.

The record makes clear that Plaintiff never filed a grievance expressly complaining about the June 2019 decision to close the SOU law library on Mondays.  The fact that Plaintiff filed a grievance against Mr. McNamara two months prior to the closure alleging that Mr. McNamara had made a non-specific threat to "nail" Plaintiff simply cannot be construed as a challenge to

REPORT AND RECOMMENDATION
PAGE - 12

1   the subsequent decision of Ms. Dominique Kastle and Mr. McNamara to close the law library on

2   Mondays.  Plaintiff's April 2019 grievance against Mr. McNamara therefore did not serve to

3   exhaust the first count of his amended complaint.

4          To the extent Plaintiff argues he was not permitted to grieve Mr. McNamara's actions in

5   relation to the closure of the law library because he never heard Mr. McNamara actually say the

6   law library was closed because of Plaintiff's grievance, Plaintiff's argument is unpersuasive.

7   According to the allegations in Plaintiff's amended complaint, Mr. McNamara gave "a talk" to

8   the whole group of offenders who were in the library on June 17, 2019, which included Plaintiff,

9   and Defendant McNamara told the group that grievances had been filed and the law library

10  would be closed on Mondays if it happened again.  *See* Dkt. 10 at 7.  Immediately after hearing

11  these comments, Plaintiff reported them to a corrections officer who then went to the law library

12  and was told by Mr. McNamara that "he didn't like grievances."  *Id*.  According to Plaintiff, the

13  SOU law library was then closed the following Monday.  *Id*.  Given these alleged facts, the Court

14  finds that Plaintiff could have pursued administrative remedies regarding the law library closure

15  had he desired to do so.  For the foregoing reasons, this Court concludes that Plaintiff failed to

16  properly exhaust the first count of his amended complaint and count one should therefore be

17  dismissed.

18                      *2. Counts Four and Five*

19          With respect to the fourth and fifth counts of Plaintiff's amended complaint, Plaintiff

20  asserts that he exhausted these claims by writing a grievance and pursuing it through each level

21  of review.  Dkt. 44 at 15.  Defendants concede that Plaintiff exhausted his fifth count and, thus,

22  the Court need only address Plaintiff's argument that he properly exhausted the fourth count of

23  his amended complaint.  Plaintiff alleges in his fourth count that Mr. McNamara and/or Ms.

Dominique Kastle violated his right to equal protection because other similarly situated offenders were allowed to write grievances without those grievances resulting in a retaliatory closure of the law library.  Dkt. 10 at 18.  However, Plaintiff offers no evidence that he pursued any claim directly challenging the closure of the law library through the Offender Resolution Program nor any evidence that such remedies were unavailable.  Plaintiff therefore failed to properly exhaust the fourth count of his amended complaint and that count should be dismissed as well.

### 3. Counts Six and Seven

Finally, with respect to the sixth and seventh counts of Plaintiff's amended complaint, Plaintiff asserts that he exhausted the remedies available to him with respect to these claims by pursuing an appeal through the only process available to him.  Dkt. 44 at 15.  Plaintiff alleges in his sixth and seventh counts violations of his constitutional rights arising out of the purported refusal of Mr. Crouse and Ms. Gray to allow him to attend his July 2019 classification review hearing.  Dkt. 10 at 26-32.  Plaintiff maintains that the grievance manual allows grievances only as to issues that don't have their own appeal process, and that he utilized the designated process to appeal the actions of Mr. Crouse and Ms. Gray in relation to the classification review, but the reviewer refused to process the appeal.  *See* Dkt. 44 at 15, 33-35.

Defendants argue in their motion papers that Plaintiff failed to file a grievance with respect to his alleged exclusion from the classification/transfer hearing, but they do not address his claim that he attempted to appeal the classification review through the designated classification appeal process and thereby exhausted his claims pertaining to the classification hearing.  Plaintiff has provided a copy of the classification appeal he filed in relation to the July 2019, hearing which reflects that he raised therein issues similar to those underlying his sixth and seventh counts, but the reviewer simply failed to acknowledge and address those issues.  *See*

REPORT AND RECOMMENDATION
PAGE - 14

1  Dkt. 42 at 18.  The Court therefore concludes that Plaintiff exhausted his available administrative

2  remedies with respect to his sixth and seventh counts, and the Court will consider the merits of

3  those claims.

4        **B.**    **Merits**

5            *1. Count Five: Equal Protection - Defendant Dominique Kastle*

6        Plaintiff alleges in the fifth count of his amended complaint that Ms. Dominique Kastle

7  violated his right to equal protection when she told other offenders the law library was going to

8  close on Mondays because Plaintiff had written a grievance against Mr. McNamara.  Dkt. 10 at

9  22-26.  Plaintiff claims that other similarly situated offenders who wrote grievances about the

10  law library and law library staff were afforded privacy with respect to grievances they had

11  written.  *See id.*

12        The Equal Protection Clause of the Fourteenth Amendment prohibits a state from

13  denying to "any person within its jurisdiction the equal protection of the laws."  U.S. Const.

14  amend. XIV, § 1.  The Equal Protection Clause essentially mandates that state and local

15  governments treat alike all persons who are similarly situated.  *City of Cleburne v. Cleburne*

16  *Living Ctr.*, 473 U.S. 432, 439 (1985).  As a general matter, in order to state an equal protection

17  claim under § 1983, a plaintiff must show that the defendant acted with an intent or purpose to

18  discriminate against the plaintiff based upon membership in a protected class.  *Barren v.*

19  *Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998).

20        However, "[w]hen an equal protection claim is premised on unique treatment rather than

21  on a classification, the Supreme Court has described it as a 'class of one' claim."  *North Pacifica*

22  *LLC v. City of Pacifica*, 526 F.3d 478, 486 (9th Cir. 2008) (citing *Village of Willowbrook v.*

23  *Olech*, 528 U.S. 562, 564 (2000) (per curiam)).  In order to state a class of one claim, a plaintiff

REPORT AND RECOMMENDATION
PAGE - 15

must show that the defendant intentionally treated him differently from other similarly situated persons without a rational basis. *Id.* "A class of one plaintiff must show that the discriminatory treatment 'was intentionally directed just at him, as opposed ... to being an accident or a random act.'" *Id.* (citing *Jackson v. Burke*, 256 F.3d 93, 96 (2d Cir. 2001)). To be considered similarly situated, "a class-of-one plaintiff must be similarly situated to the proposed comparator in all material respects." *SmileDirect Club, LLC v. Tippins*, 31 F.4th 1110, 1123 (9th Cir. 2022).

Plaintiff does not allege in his amended complaint that Ms. Dominique Kastle acted with discriminatory intent when she disclosed to other SOU law library patrons that Plaintiff had written the grievance that resulted in the Monday law library closure. Moreover, neither the facts alleged in Plaintiff's amended complaint nor the evidence in the record give rise to an inference that she did so. According to the allegations in Plaintiff's amended complaint, Ms. Dominique Kastle did not initially disclose to the other law library patrons that Plaintiff was the source of the grievance, she did so only after Plaintiff reminded her that grievances were confidential. While Ms. Dominique Kastle's disclosure may have been improper, the circumstances suggest that she acted reflexively in telling other offenders about Plaintiff's grievance and not with any intent to discriminate against him.

Moreover, Plaintiff fails to demonstrate that he was similarly situated to other individuals whom he claims were treated differently. In his amended complaint, Plaintiff alleges generally that other offenders were similarly situated in that they wrote grievances about the law library and/or law library staff which were afforded privacy while his was not. *See* Dkt. 10 at 22-25. Although Plaintiff indicated in his pleading that he expected to obtain evidence during discovery that similar grievances were written by other offenders, and to obtain statements from the other offenders that Ms. Dominique Kastle did not treat their grievances the same way she treated his,

1  Plaintiff has produced no such evidence in response to Defendants' summary judgment motion.

2  Plaintiff's allegations in this regard are too vague and conclusory to demonstrate that the other

3  offenders he references were, in fact, similarly situated or that they were treated differently.

4  Plaintiff therefore fails to establish a viable equal protection claim against Ms. Dominique Kastle

5  and, thus, Defendants are entitled to summary judgment with respect to count five.

6  　　　　　　　　*2. Count Six: Free Speech - Defendant Crouse*

7  　　　　Plaintiff alleges in the sixth count of his amended complaint that Mr. Crouse and Ms.

8  Gray violated his right to free speech when they told him he was not allowed to attend his

9  classification review hearing in July 2019.  *See* Dkt. 10 at 26-31.  Plaintiff contends that, in

10  accordance with DOC policy, classification hearings are a designated forum for inmates to

11  present speech on their own behalf with respect to their custody classification and housing, and

12  that denying him the opportunity to attend his classification hearing therefore denied him his

13  right to speech.  *See id.*

14  　　　　Plaintiff's sixth count implicates the First Amendment which provides that "Congress

15  shall make no law respecting an establishment of religion, or prohibiting the free exercise

16  thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably

17  to assemble, and to petition the Government for a redress of grievances."  U.S. Const. amend I.

18  Plaintiff does not identify in his pleading any law or policy pursuant to which his right to free

19  speech was abridged.  Indeed, at its core, Plaintiff's purported free speech claim appears to

20  constitute a mere challenge to Defendants' alleged failure to comply with DOC policy and

21  practice of permitting inmates to attend classification review hearings.  As Defendants correctly

22  note, the violation of a prison policy does not constitute a *per se* violation of a constitutional

23  right.  *See Case v. Kitsap Cty. Sheriff's Dep't*, 249 F.3d 921, 930 (9th Cir. 2001).

REPORT AND RECOMMENDATION
PAGE - 17

1    The Court also observes that it is well established that a prisoner does not have a liberty

2    interest in a particular classification status.  *Hernandez v. Johnston*, 833 F.2d 1316, 1318 (9th

3    Cir. 1987) (citing *Moody v. Daggett*, 429 U.S. 78 (1976)).  Likewise, a prisoner does not have a

4    protected liberty interest in the location of his confinement.  *Meachum v. Fano*, 427 U.S. 215,

5    223-27 (1976).  Because Plaintiff had no liberty interest at stake, he had no right to be heard in

6    relation to the classification decision or the accompanying recommendation that he be transferred

7    to WSP.  Nonetheless, DOC policy did afford Plaintiff an opportunity to appeal the classification

8    decision and thereby speak to the issues of concern to him arising out of the classification

9    review.  Unfortunately, Plaintiff failed to clearly articulate his concerns in his classification

10   appeal and the reviewing authority therefore denied the appeal without reaching the substance of

11   his complaints as they pertained to the classification review.  However, Plaintiff's deficiencies in

12   articulating his concerns on appeal cannot be attributed to Defendants.

13        In sum, there is no evidence in the record demonstrating that Plaintiff's right to free

14   speech was abridged in relation to his classification review.  Defendants are therefore entitled to

15   summary judgment with respect to Plaintiff's sixth count.

16                    *3. Count Seven: Equal Protection - Defendant Crouse*

17        Plaintiff alleges in the seventh count of his amended complaint that his equal protection

18   rights were violated when Mr. Crouse and Ms. Gray refused to allow him to go to his

19   classification review hearing while other similarly situated offenders were allowed to go to

20   theirs.  Dkt. 10 at 31-32.

21        The Court first observes that the record is devoid of any evidence that Plaintiff was, in

22   fact, precluded from attending the classification hearing at issue.  According to Mr. Crouse,

23   Plaintiff was present at the hearing that was conducted on July 12, 2019, regarding changes to his

facility plan and a recommendation that he be transferred to WSP.  Dkt. 26, ¶ 5.  Plaintiff argues that his interaction with Mr. Crouse and Ms. Gray on July 12, 2019, was not a classification FRMT meeting because "it did not have the characteristics or qualities" of such a hearing.  Dkt. 44 at 11; *see also id*., at 29-32.  According to Plaintiff, the interaction had the attributes of a simple notification of an upcoming hearing and not an actual hearing.  *See id*. at 29-32.

However, regardless of how the interaction on July 12, 2019, between Plaintiff and Mr. Crouse is characterized, Plaintiff offers no evidence of discriminatory intent in relation to Mr. Crouse's actions on that date.  At most, Plaintiff raises questions about whether DOC policy was properly followed with respect to the conduct of classification hearings, questions that do not by themselves implicate federal constitutional concerns.

The Court further observes that, as was the case with the equal protection claim discussed above in relation to Ms. Dominique Kastle, Plaintiff fails to demonstrate that he was similarly situated to other individuals who he claims were treated differently.  Plaintiff alleges generally that other offenders were similarly situated in that they were allowed to attend their classification hearings.  *See* Dkt. 10 at 31.  Plaintiff, however, offers no actual evidence to support this claim.  Plaintiff's allegations are once again too vague and conclusory to demonstrate that other offenders were, in fact, similarly situated or that they were treated differently.  Plaintiff therefore fails to establish a viable equal protection claim against Mr. Crouse and, thus, Defendants are entitled to summary judgment with respect to count five.

### C.    State Law Claim

Plaintiff alleges in the eleventh count of his amended complaint a state law breach of contract claim relating to Ms. Dominique Kastle's failure to keep Plaintiff's grievance against Mr. McNamara confidential and Ms. Dominique Kastle's alleged retaliation against Plaintiff for

filing the grievance. *See* Dkt. 10 at 45-47. The Supreme Court has stated that federal courts should refrain from exercising their pendent jurisdiction when the federal claims are dismissed before trial. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966). Because Plaintiff's federal claims are subject to dismissal based upon his failure to exhaust his administrative remedies and/or his failure to establish any violation of his federal constitutional rights, the Court declines to exercise jurisdiction over Plaintiff's state law claim.

## V.    CONCLUSION

Based on the foregoing, this Court recommends that Defendants' motion for summary judgment (Dkt. 22) be granted and that Plaintiff's amended complaint (Dkt. 10) and this action be dismissed. More specifically, this Court recommends that counts two, three, eight, nine, ten and twelve of Plaintiff's amended complaint be dismissed with prejudice pursuant to Plaintiff's request for voluntary dismissal of these claims. The Court further recommends that counts one and four of Plaintiff's amended complaint be dismissed with prejudice for failure to exhaust administrative remedies, and that counts five, six, and seven be dismissed with prejudice for failure of Plaintiff to establish any violation of a federal constitutional right. Finally, the Court recommends that Plaintiff's state law breach of contract claim be dismissed without prejudice. A proposed Order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk within **twenty-one (21) days** of the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect the right to appeal. Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **January 19, 2024**.

DATED this 27th day of December, 2023.

S. KATE VAUGHAN
United States Magistrate Judge

REPORT AND RECOMMENDATION
PAGE - 21